**Darnell Benjiman DOLEMAN, Appellant,**

v.

**R. M. MUNCY, Superintendent, Appellee.**

**No. 77–2150.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 8, 1978.

Decided, June 29, 1978.

Adrienne E. Volenik, Maryland Juvenile Law Clinic, Baltimore, Md. (Peter S. Smith, Maryland Juvenile Law Clinic, Baltimore, Md., and Roger J. Myerberg, Third Year Law Student, on brief), for appellant.

James E. Kulp, Asst. Atty. Gen., Richmond, Va. (Anthony F. Troy, Atty. Gen. of Virginia, Richmond, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and HALL, Circuit Judges.

K. K. HALL, Circuit Judge:

Petitioner, Darnell B. Doleman, filed a *pro se* petition for a writ of habeas corpus

in the United States District Court for the Eastern District of Virginia, at Alexandria, naming R. M. Muncy, the Superintendent of Prisons, and the Attorney General of the State of Virginia as respondents.[1] The district court ordered the petition filed but then dismissed it for two reasons.

First, the court held that Doleman's Fourth Amendment claims were barred by *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Second, it held that Doleman had not pleaded sufficient facts in his petition in order to demonstrate that a pretrial "showup" was unconstitutionally prejudicial. Although the suit was dismissed, the court did give Doleman leave to file an amended petition within fifteen days to set forth sufficient facts to make out a constitutional claim.

Doleman responded by filing a second *pro se* petition which reiterated the same two grounds which were contained in the first petition in a slightly amplified form. The district court judge filed the second petition out-of-time and construed it as an amendment to the earlier petition. Upon this record, the court renewed its earlier rulings. First, the search and seizure claim was precluded from federal consideration by *Stone v. Powell, supra*. Second, any error predicated upon the pretrial "showup" was not constitutionally prejudicial since Doleman's state court trial on armed robbery charges was conducted before a judge and not a jury.

Doleman filed a timely notice of appeal. Counsel was appointed and the case has been fully briefed and argued orally. We affirm in part, reverse in part, and remand with directions.

## I.

## FACTS

From what we can discern from the record in this case,[2] at some unspecified time

---

1. Doleman is a Virginia State prisoner who was sentenced from state court to serve a term of twelve years for armed robbery following a trial without a jury.

2. The record before us is indeed scant. No answer was required from the named defendants nor were any affidavits filed. We do not have any part of the state record before us.

prior to June 25, 1975, an armed robbery occurred somewhere in Arlington County, Virginia. Doleman, a black, and two other black companions were in a vehicle which was stopped by a police officer or officers.[3] The police, with guns drawn, ordered the occupants out of the vehicle and told them to raise their hands.[4] At most, Doleman alleges that in this case, unlike *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the observations of the police officer "in no way indicated any suspicious behavior on the part of Doleman and companions." [5]

After the vehicle was stopped near a bridge, Doleman and his two companions were standing in the "search" position with their backs to the unnamed witness.[6] The police ordered the trio to turn around. According to the petition, there were no other suspects present at this showup near the

bridge. "There were no other blacks in the vicinity."

Doleman then specifically alleged that the "[w]itness had been told by the police that if he did not positively identify the subjects they would be released." (Second Petition, at 5–6; Record, at 15, 16). The allegation in his first petition was similar: "[t]he police told the *victim* if he did not identify 'these' men they would be let go." (First Petition, at 4; Record, at 6). (Emphasis added). Following a view of the suspects for "several minutes," the defendants were apparently identified as the armed robber or robbers.[7]

At some juncture in this narrative, the police conducted a warrantless search of the vehicle in which the trio was riding and *may* have located a weapon or weapons which may have been introduced into evidence over Doleman's motion to suppress during the state armed robbery trial.[8]

Thus, the facts, such as they are, have been drawn totally from the two *pro se* petitions filed by Doleman and from inferences drawn therefrom.

3. There is no factual explanation as to why the officers stopped the car or who owned the car. Petitioner cites *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and complains that "an arrest on the basis of an informants (sic) information is only proper if there are indicia of liability (sic reliability) present which justify the issuance of a warrant or action by a police officer." No facts are stated in support of this legal conclusion, and at this juncture, the existence, or not, of an informant's tip is pure conjecture.

4. From this point on, Doleman argues that he was under "arrest" and that his arrest was not based upon probable cause. Consequently, the evidence thereafter seized and the identification of him should have been suppressed pursuant to the motion to suppress which was made in his case.

As noted, we do not know how, when, or even if, the police officers had probable cause to stop the vehicle in which Doleman was travelling. We do not even know when or where the robbery occurred, where the trio was accosted, or how long after the robbery their arrest occurred.

Doleman does cite as being "exactly on all fours," factually, two judicial decisions: *United States v. Strickler*, 490 F.2d 378 (9th Cir. 1974), and *United States v. Ramos-Zaragosa*, 516 F.2d 141 (9th Cir. 1975). Despite the asserted anal-

ogy between the facts in these two cases and the case at bar, petitioner did not plead sufficient underlying *facts* to enable a court to ascertain if in fact those two decisions were applicable.

5. Doleman also alleges that the officer, who apparently decided to stop the vehicle in which he and his companions were travelling, did not testify that the reason for the stop related to "any potential traffic offense."

In the second petition, Doleman complains that there is nothing in the record "as to weather (sic) [the] witness gave any description which in any way matched the defendant's." (Second Petition, p. 5, Record, at 15).

6. We know precious little about this witness. As is discussed later, we cannot tell whether the witness was simply an eyewitness to the armed robbery *or* an actual victim. Both are alleged.

7. Doleman alleges that the "witness only saw the alleged robbers a 'matter of seconds,' but was allowed to veiw (sic) the defendants at the Bridge for several minutes." (Second Petition, at 5; Record, at 15).

Petitioner relied on *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), as a case "on all fours" with the showup conducted here.

8. Doleman alleged: "The arresting officers obtained evidence by illegally searching defendants (sic) car without permission, or search warrant or probable cause to look for weapons. —At time of arrest officers had no information

Doleman's state criminal trial was conducted before the Circuit Court of Arlington County, Virginia, in a trial to the court. At that trial, the "witness" who participated in the showup presumably testified. Doleman alleges that this witness "was allowed to testify at trial as to his prior identification on the Bridge and to identify the defendants at trial" which also was admitted over Doleman's motion to suppress. (Second Petition, at 5, 2; Record, at 15, 12).[9]

This trial resulted in a conviction of Doleman[10] on the charge of armed robbery on June 25, 1975, and a sentence of twelve years. He petitioned the Supreme Court of Virginia for review, but it was denied on April 12, 1976. Thereafter, he petitioned for a writ of certiorari in the Supreme Court of the United States, but this was also denied on November 1, 1976. *Doleman v. Virginia,* 429 U.S. 929, 97 S.Ct. 336, 50 L.Ed.2d 299 (1976).

On February 28, 1977, Doleman filed his first petition for a writ of habeas corpus in the Eastern District of Virginia, which petition, as amended, and dismissed, led to this appeal.

## II.

### *STONE v. POWELL*

The district court holding in this case presents an opportunity for us to formally address ourselves to the Supreme Court's holding in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). That decision presents two related problems for consideration. First, what is the substantive reach of *Stone?* Second, procedurally, how is the substantive reach of *Stone* to be applied in this and future cases?

as to who the suspects were or that a car was involved in the crime." (First Petition, at 3; Record, at 5).

In his second petition, Doleman alleges error in the trial court's "admission of evidence allegedly obtained as the result of an illegal arrest. . . ." but does not specify what evidence he refers to. (Record, at 12.)

## A.

### THE HOLDING IN *STONE*

The ultimate holding in *Stone* was presaged by the concurring opinion of Mr. Justice Powell in *Schneckloth v. Bustamonte,* 412 U.S. 218, 250, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Although the majority of the Court in *Schneckloth* focused on the consensual search problem under the Fourth Amendment, 412 U.S. at 248–49, 93 S.Ct. 2041, Mr. Justice Powell, the Chief Justice, and Mr. Justice Rehnquist all noted that the proper scope of federal collateral habeas review of a state prisoner's Fourth Amendment claims raised an issue of importance to our system of criminal justice, and although they joined in the majority opinion, Justice Powell filed a separate concurring opinion.

The concurrence argued that neither history, nor the purpose of the writ of habeas corpus, nor the desired prophylactic utility of the exclusionary rule as applied in Fourth Amendment claims, nor any sound reason relevant to the administration of justice justified a federal court, on collateral review of a state court conviction, to review asserted Fourth Amendment claims with the application of the exclusionary rule in precisely the same manner as it would or could have been utilized on direct review. 412 U.S. at 251, 93 S.Ct. 2041. The concurring opinion clearly distinguished between those claims which bear upon the guilt or innocence of an accused, such as a claim of ineffective assistance of counsel or some claimed violation of the privilege against self-incrimination, which should be cognizable under a traditional application of habeas principles, and those claims which rarely bear upon innocence, such as traditional Fourth Amendment claims. The con-

9. Doleman also complains of the in-court identification since the witness at trial "was unable to state that the suggestive showup at the Bridge did not have any impact on his identification." (Second Petition, at 5; Record, at 15).

10. Doleman appears to allege that all three of the occupants of the car were tried at the same time. We cannot tell what actually transpired in state court from the record before us.

curring Justices would have held that federal collateral review of a state prisoner's Fourth Amendment claims should have been confined solely to the question of "whether the petitioner was provided a fair opportunity to raise and have adjudicated the [Fourth Amendment] question in state courts." 412 U.S. at 250–51, 93 S.Ct. at 2059. This view was based upon a number of factors, but most significantly upon certain key factors. *See also* 412 U.S. 274 ·75, 93 S.Ct. 2041.

First. "Prisoners raising Fourth Amendment claims collaterally usually are quite *justly* detained. The evidence obtained from searches and seizures is often 'the clearest proof of guilt' with a very high content of reliability." 412 U.S. at 258, 93 S.Ct. at 2063.

Second. "When raised on federal habeas, a claim generally has been considered by two or more tiers of state courts. . . . The task which federal courts are asked to perform on habeas is thus most often one that has or should have been done before." 412 U.S. at 259, 93 S.Ct. at 2064.

Third. Pragmatically, a broad federal habeas review too often occurred in a complex factual setting with the relevant events occurring many years earlier. 412 U.S. at 263, 93 S.Ct. 2041. Consequently, the concept of "finality" in criminal cases was being frustrated with attendant adverse effects falling upon society and our penal system. 412 U.S. at 261–62, 93 S.Ct. 2041. And, any deterrent function of the exclusionary rule became "greatly attenuated" when years later, the claim surfaced on collateral review. 412 U.S. at 269 70, 93 S.Ct. 2041.

Fourth. The constant specter of federal district court collateral review and re-review of state court interpretations and applications of the Fourth Amendment "prompted no small friction between state and federal judiciaries." 412 U.S. at 263, 93 S.Ct. at 2066.

Based upon a much more exhaustive analysis than has been detailed above, Mr. Justice Powell stated quite clearly that:

Where there is no constitutional claim bearing on innocence, the inquiry of the federal court on habeas review of a state prisoner's Fourth Amendment claim should be confined solely to the question whether the defendant was provided a fair opportunity in the state courts to raise and have adjudicated the Fourth Amendment claim. Limiting the scope of habeas review in this manner would reduce the role of the federal courts in determining the merits of constitutional claims with no relation to a petitioner's innocence and contribute to the restoration of recently neglected values to their proper place in our criminal justice system.

412 U.S. at 266, 93 S.Ct. at 2067.

It was against this backdrop that Mr. Justice Powell penned the majority opinion in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

In *Stone,* in reality two separate cases, both defendants sought to present Fourth Amendment claims for federal review despite the fact that they had previously been furnished with, and chose to exercise, an opportunity to litigate their exclusionary claims in the state court system. Both petitioners were unsuccessful in their attempts to exclude evidence from their state court trials, but both were later ultimately successful in securing federal habeas relief for these same Fourth Amendment claims. The wardens in each case sought review in the Supreme Court.

The Supreme Court reversed in both cases holding that

where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

96 S.Ct. at 3046.

Later, at the conclusion of the opinion, the Court twice restated its holding: At 96 S.Ct. 3052, the holding is nearly verbatim with the holding immediately quoted above,

with the exception of the addition of footnote 36. The first restated holding is as follows:

> In sum, we conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim,[36] a state prisoner may not be
>
> [36] Cf. *Townsend v. Sain,* 372 U.S. 293, [83 S.Ct. 745, 9 L.Ed.2d 770] (1963).
>
> granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.[37]

96 S.Ct. at 3052.

The second restated holding appears as footnote 37 at the end of the quotation immediately set forth above. It recites:

> In sum, we hold only that a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review. Our decision does not mean that the federal court lacks jurisdiction over such a claim, but only that the application of the rule is limited to cases in which there has been both such a showing and a Fourth Amendment violation.

96 S.Ct. at 3052 n. 37; *see also* 96 S.Ct. at 3049, where the "issue" before the Court is posed in similar terminology.

In this appeal, Doleman contends that the district court misapplied *Stone* in its dismissal of the petition, as amended. He urges that a proper application of *Stone* requires a two step analysis. First, an inquiry must be made to see if a state prisoner was given a full and fair hearing in the state courts on his Fourth Amendment claims.[11] Second, if petitioner was not given such a hearing, then was he given the opportunity for such a hearing?

Petitioner argues that he should prevail in his analysis of *Stone* whether this court

should follow the rule in *Graves v. Estelle,* 556 F.2d 743 (5th Cir. 1977), or the view contained in *Simmons v. Clemente,* 552 F.2d 65 (2nd Cir. 1977).

Under the rule in *Graves,* the district court thoroughly reviews the state court record to determine if all procedural steps were properly taken. There is no inquiry into the substantive merit of the Fourth Amendment claims. If the procedures were correctly followed in state court, the federal court does not address itself to the merits of the Fourth Amendment claim. Essentially then, the *Graves* approach to *Stone* focuses upon whether or not a state prisoner had a procedurally full and fair opportunity to litigate his Fourth Amendment claims in state court.

Under the rule in *Simmons,* the district court is also to thoroughly review the state court record to determine whether the proceedings allowed for a full and fair resolution of the Fourth Amendment claim. However, the district court is permitted to examine the substantive merits of the petitioner's claim. If review of the record indicates that petitioner's Fourth Amendment claims were litigated fully and fairly, his petition is dismissed. If the record reveals that petitioner's Fourth Amendment claims were not so litigated, the district court must then decide whether the state provided the petitioner with the opportunity for full and fair litigation of his claim. If such an opportunity existed, then *Stone* mandates dismissal. If such an opportunity did not exist, the district court reaches the Fourth Amendment claim on its merits.

Petitioner urges us to adopt the approach embraced by *Simmons* for three reasons. First, it incorporates the *Townsend v. Sain* criteria into *Stone* in accordance with footnote 36 in *Stone* without tampering with *Stone's* objective which was to limit the scope of federal review of Fourth Amend-

---

11. Doleman argues that our sister circuits have focused on answers to four questions in the analysis of whether *Stone* should bar habeas relief: (1) Was the Fourth Amendment issue considered by the trial court?; (2) What was the nature and scope of the evidence con-

sidered by the trial court in resolving the Fourth Amendment claim?; (3) Was the Fourth Amendment issue raised on appeal?; and (4) What was the nature and scope of the consideration of the Fourth Amendment claim at the appellate level?

ment claims.[12] Second, it assures a comprehensive review of the state trial record. Third, such an approach lends itself to the development of concrete guidelines that a federal court can apply on a case-by-case basis.

The state contends that the district court correctly interpreted *Stone* and properly dismissed Doleman's petition. It argues that the Supreme Court was concerned more with the adequacy of state procedures available to test Fourth Amendment claims than it was in focusing upon the results of those hearings. Relying upon footnote 37 in *Stone*, quoted above, the state further argues that federal courts are not required to take any action in reviewing state court convictions relating to Fourth Amendment claims unless the petitioner has made a showing that he was denied an opportunity to fairly and fully litigate his Fourth Amendment claim in state court.

The state disputes petitioner's analysis of *Stone* and the incorporation of the *Townsend v. Sain* criteria as part of the *Stone* rule.[13] First, the reference in *Stone* to *Townsend* was merely a footnote reference preceded by "Cf." According to the *Uniform System of Citation* 7 (12th ed. 1976) this signal is to be used as follows:

> Cf.: Cited authority supports a proposition different from that in text but sufficiently analogous to lend support. Literally, "cf." means "compare." "Cf." should not be used without an explanatory parenthetical.

Had the Court intended to engraft the *Townsend v. Sain* criteria into the *Stone* situation, it could have done so expressly instead of by a passing footnote reference. Second, and pragmatically, to incorporate the *Townsend* criteria into a *Stone* analysis

would require the federal courts to engage in an exhaustive review of the record to ascertain if the *Townsend* criteria had been met. *Stone* itself did not engage in such an analysis, and the state urges that the policy, spirit and rationale of *Stone* preclude such an interpretation.

The state relies upon still other decisions of our sister circuits in support of its position. Chief in its arsenal of precedent are *Dupont v. Hall*, 555 F.2d 15 (1st-Cir. 1977), and the *en banc* decision of the Second Circuit in *Gates v. Henderson*, 568 F.2d 830 (2nd Cir. 1977), reversing a previous panel decision in that Circuit which had relied upon *Townsend*.

From these, and other decisions, the state concludes that a proper interpretation of *Stone* requires a federal court to focus on whether the state has provided the petitioner with an opportunity for full and fair litigation of his Fourth Amendment claims. If such a procedural vehicle ("opportunity") was provided, then *Stone* applies, and the district court need go no further. However, should petitioner be able to allege some inhibition of his "opportunity" to fully and fairly litigate his Fourth Amendment claims, then if the district court determined that petitioner was not furnished with the requisite "opportunity" under *Stone*, some inquiry into the Fourth Amendment claim would be necessary. Thus, the state concludes that petitioner's interpretation of *Stone* is the exact reverse of what it should be. "Opportunity" must be analyzed before "full and fair hearing," not afterwards.

Support for the state's view, for example, can be drawn from *Gates*. There, the Second Circuit noted that the petitioner had not argued that New York had failed to provide the requisite procedural devices which were necessary to afford Gates an

---

**12.** The Court in *Townsend* held

that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4)

there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing. 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770. *See also* 28 U.S.C. § 2254(d).

**13.** See n.12, *supra*.

opportunity to raise his Fourth Amendment claims. *Gates*, 568 F.2d at 837.[14]

■ We agree with the Second Circuit in *Gates, en banc.* We hold that in its analysis of a petition for habeas corpus under 28 U.S.C. § 2254, a district court, when faced with allegations presenting Fourth Amendment claims, should, under the rule in *Stone v. Powell, supra,* first inquire as to whether or not the petitioner was afforded an *opportunity* to raise his Fourth Amendment claims under the then existing state practice. This may be determined, at least in this Circuit, from the relevant state statutes, the applicable state court decisions, and from judicial notice of state practice by the district court. *Gates, supra,* at 837.

■ Second, we hold that when the district court has made the "opportunity" inquiry, it need not inquire further into the merits of the petitioner's case, when applying *Stone v. Powell, supra,* unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired. *See, e. g.,* note 14, *supra,* and Part II.B. *infra.*

■ In the instant case, the application of *Stone* is clear. The commonwealth of Virginia did provide Doleman with a mechanism whereby during his state criminal case, he had an opportunity to present his Fourth Amendment claims by a motion to suppress both at the trial court level and thereafter to assign as an error, an adverse ruling thereon, on appeal. *See, e. g.,* Code of Virginia, § 19.2–60 (Michie 1950)[15]; Rule 3A:28, Rules of Practice of the Supreme Court of Virginia.[16] In accordance with our holding, *supra,* we believe that the district court below did not err in its initial interpretation of *Stone,* and affirm on that point.

## B.

### THE PROCEDURAL REACH OF *STONE*

Ordinarily, our holding above would foreclose further inquiry into the validity of Doleman's Fourth Amendment claims. However, since Doleman has not had the

14. Indeed, the New York Legislature had expressly provided a statutory mechanism for the suppression of evidence which was allegedly obtained in violation of the Fourth Amendment. *Gates,* 568 F.2d at 837.

The *Gates* court did mention two possible instances in which federal habeas review would not be precluded by *Stone.* These could arise first, where the state provided no corrective procedures at all to test asserted Fourth Amendment violations, *Gates, supra,* at 840, citing *United States ex rel. Petillo v. New Jersey,* 418 F.Supp. 686 (D.N.J.1976), vacated and remanded, 562 F.2d 903 (3rd Cir. 1977), and second, where the state provides a corrective process, but the defendant is unable to utilize it because of an unconscionable breakdown in that process, citing *Frank v. Mangum,* 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915), and Bator, *Finality in Criminal Law and Habeas Corpus for State Prisoners,* 76 Harv.L.Rev. 441 (1963). *Gates, supra,* at 840. *See also* 28 U.S.C. § 2254(b).

We do not have before us any exceptions to *Stone.* We express no opinion on this issue.

15. Section 19.2–60 provides:

§ 19.2–60. *Motion for return of seized property and to suppress.*—A person aggrieved by an allegedly unlawful search or seizure may move the court to return any seized property and to suppress it for use as evidence. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted by a court of record, any seized property shall be restored as soon as practicable unless otherwise subject to lawful detention, and such property shall not be admissible in evidence at any hearing or trial. If the motion is granted by a court not of record, such property shall not be admissible in evidence at any hearing or trial before that court, but the ruling shall have no effect on any hearing or trial in a court of record. (1975, c. 495).

16. Rule 3A:28 provides:

Rule 3A:28. *Motion for Return of Seized Property and to Suppress.* A person aggrieved by an allegedly unlawful search or seizure may move the court to return any seized property and to suppress it for use as evidence. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted by a court of record, any seized property shall be restored as soon as practicable unless otherwise subject to lawful detention, and such property shall not be admissible in evidence at any hearing or trial. If the motion is granted by a court not of record, such property shall not be admissible in evidence at any hearing or trial before that court, but the ruling shall have no effect on any hearing or trial in a court of record.

benefit of our interpretation and application of *Stone*, as set forth in this case, nor has he had a chance in light of this opinion to consider whether he received an unimpaired opportunity for full and fair litigation of his Fourth Amendment claims, we believe it appropriate to remand this particular case to the district court to allow Doleman to file a Second Amended Petition seeking a writ of habeas corpus.

Doleman should be notified, in the order to be entered by the court below, that his petition, as amended, does not state a claim upon which relief can be granted under our interpretation and application of *Stone v. Powell, supra.* He should be given leave to file the Second Amended Petition, if he chooses to do so, and should also be informed in the court order to be entered that in order to properly state a claim for habeas relief, the burden of pleading and proof is upon him to indicate in the petition, and at a hearing, if necessary, the *reasons* he has, and *the facts in support thereof,* as to why he contends he did not receive an opportunity for a full and fair litigation of his Fourth Amendment claims.

Following the filing of the Second Amended Petition, and a response from the state, if the district court deems one advisable, the court may pass anew on whether Doleman's Fourth Amendment claims are cognizable in the federal courts under *Stone v. Powell, supra.*[17] As Justice Powell held, in footnote 37 in *Stone*:

> . . . we hold that a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim *absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review.*

17. Should Doleman adequately allege an impairment of his opportunity for a full and fair litigation of his Fourth Amendment claims, we believe that the safest practice to follow would require, at a minimum, an invitation to the state to respond to the petition for a writ of habeas corpus in some appropriate fashion including in that response, all or such parts of the state record as are relevant in the habeas case.

96 S.Ct. at 3052, n.37 (emphasis added.) *See also, Tisnado v. United States,* 547 F.2d 452, 455 (9th Cir. 1976).

## III.

### THE IDENTIFICATION ISSUE

The facts such as they are, surrounding the show-up involving Doleman at some unspecified time after the robbery, have been detailed above in Part I of this opinion.

Petitioner contends: (1) that the pretrial show-up in which he was forced to participate was so suggestive as to violate his due process rights under both the Fifth and Fourteenth Amendments; and (2) that the district court erroneously relied on *Smith v. Paderick,* 519 F.2d 70 (4th Cir. 1975), *cert. denied sub. nom., Smith v. Riddle,* 423 U.S. 935, 96 S.Ct. 293, 46 L.Ed.2d 267 (1975), in holding that while the new facts alleged by petitioner "might be sufficient to warrant further inquiry, *cf. Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Smith v. Coiner,* 473 F.2d 877 (4th Cir. 1973), . . . [because Doleman] was tried by a judge without a jury. . . .", then no error of constitutional proportions was raised.

The state responds by contending that Doleman's petition failed to raise a constitutional issue necessitating further inquiry by the district court. The state would defer to the experience and ability of state, as well as federal judges, to ignore inadmissible evidence, and critically view and give appropriate weight, if any, to evidence that lacks full badges of trustworthiness such as eyewitness identifications and particularly, show-ups. *See Smith v. Paderick, supra,* at 75.

But brief reference to the *en banc* holding in *Gates, supra,* demonstrates that the original *Gates* panel was substantially misled by the lack of a full factual record of the state proceedings when the initial panel decision was decided. *See Gates, supra,* (Oakes, J., concurring) at pp. 840–843. Simply put, bad records as well as hard cases, make bad law.

The fact that Doleman was tried by a judge without a jury was not alone a sufficient basis for summary dismissal on this record. That was a circumstance to which we gave great weight in *Smith v. Paderick*, but there the trial judge had stated on the record that he gave little weight to the challenged identification testimony, stating that if there was no other persuasive identification evidence he would not have found the defendant guilty. Here, the record of the state court trial contains no indication of what, if any, weight the trial judge gave to this challenged identification testimony. Without some indication by the trial judge that he gave it little weight, we cannot assume that he did not find it persuasive.

We hold that contrary to the view expressed by the district court below, that upon the facts as set forth in Doleman's two petitions, and the inferences which may be fairly drawn therefrom, that an adequate factual basis was presented necessitating a further inquiry by the district court into the factual and legal underpinnings of Doleman's allegations about the show-up in order to ascertain if an issue of constitutional magnitude was presented. The record before us is not sufficiently complete for us to decide whether or not there was an unduly suggestive identification which would have affected the trial judge who was sitting as the trier of fact.

Upon remand, the district court should give Doleman leave to detail the *facts* which support his conclusion that the show-up was constitutionally impermissible as part of his Second Amended Petition for habeas relief. Doleman, the state, and the district court should focus upon those factors enumerated in *Neil v. Biggers, supra,* 409 U.S. at 199, 93 S.Ct. 375 and *Manson v. Braithwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). *See also Faison v. Zahradnick,* 563 F.2d 1135 (4th Cir. 1977); *United States v. Colclough,* 549 F.2d 937 (4th Cir. 1977); *Stanley v. Cox,* 486 F.2d 48 (4th Cir. 1973), *cert. denied,* 416 U.S. 958, 94 S.Ct. 1975, 40 L.Ed.2d 309 (1974).

*AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.*[18]

---

**18.** See *Tisnado v. United States, supra,* at 455, n.3.