**Walter Lamar GOOLSBY, Petitioner,**

v.

**Terrell Don HUTTO, et al., Respondents.**

**Civ. A. No. 81–0676–AM.**

United States District Court,
E. D. Virginia,
Alexandria Division.

Oct. 6, 1981.

Thomas J. Foltz, Alexandria, Va., for petitioner.

Robert H. Anderson, III, Asst. Atty. Gen., Richmond, Va., for respondents.

## MEMORANDUM OPINION

ALBERT V. BRYAN, Jr., District Judge.

Petitioner, a Virginia state prisoner, attacks, pursuant to 28 U.S.C. § 2254, his conviction in the Circuit Court of the City of Alexandria on a charge of possession of marijuana with intent to distribute. He asserts the following constitutional violations:

(1) That he was subjected to double jeopardy;

(2) That he was convicted by use of illegally obtained self-incriminating statements;

(3) That he was illegally searched; and

(4) That the evidence against him was insufficient to support a conviction.

Petitioner has exhausted his state court remedies, his petition for a writ of error to the Supreme Court of Virginia having been denied on October 27, 1980.

This matter is before the court on the respondent's motion to dismiss and on petitioner's reply, along with memoranda of law and a transcript of the proceedings at petitioner's trial in state court. These motions and exhibits adequately develop the issues and reveal no material facts in dispute. Accordingly, the court will treat defendant's motion to dismiss as a motion for summary judgment and resolve the questions of law presented.

Petitioner claims first that his trial and conviction in the circuit court were in violation of the constitutional protection against double jeopardy. The record reveals that petitioner appeared before the Alexandria General District Court on September 21, 1979, for a preliminary hearing on the felony charge of possession of marijuana with intent to distribute. The court found no probable cause for the felony, but found probable cause to support a misdemeanor charge of possession. In accordance with Code of Virginia § 19.2–186 (1975), the court discharged the petitioner as to the felony and set the misdemeanor for trial. On the date set for trial, the Commonwealth moved to *nolle prosequi* the misdemeanor, indicating that it wished to secure a grand jury indictment on the felony. The court, exercising the discretion afforded it under Code of Virginia § 19.2–265.3 (1980 Supp.), denied the motion. When the Commonwealth advised that it would not present any evidence, the presiding judge called and swore as a witness the complaining officer, who had been subpoenaed upon petitioner's request. The Commonwealth declined to examine the officer and neither the court nor petitioner posed any questions. The judge thereupon had the witness stand down, declared that jeopardy had attached, and that there being no evidence in the matter the case was dismissed. *See* Respondent's Exhibit 1 at 2.

Despite this proceeding, the Commonwealth pursued its original plan to obtain an indictment on the felony. Petitioner was convicted of possession with intent to distribute in the Circuit Court of the City of Alexandria on January 10, 1980, the court having previously determined that because the Commonwealth had refused to present evidence in the district court, petitioner had never been in danger of conviction, and therefore jeopardy had not attached.

Petitioner presents two theories in support of his claim that jeopardy attached at the district court proceeding, thus making the circuit court trial a violation of his right to be free from double jeopardy. He argues first that *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), and *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975), established as the federal rule that jeopardy attaches in nonjury trials with the swearing of the first witness, and that this rule should be binding on the states for many of the same reasons that *Crist* imposed the federal rule on the states for jury cases. *See Crist*, 437 U.S. at 38, 98 S.Ct. at 2162. Petitioner secondly would characterize the district court dismissal as a termination of the proceedings in the defendant's favor, precluding a second trial on the same matter. *See* Petitioner's Reply at p. 2–3 (citing *Lee v. United States*, 432 U.S. 23, 29–30, 97 S.Ct. 2141, 2145, 53 L.Ed.2d 80 (1977)).

■ A favorable termination such as would invoke the double jeopardy bar exists, however, only where "the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977). Here the district judge heard no evidence; his dismissal of the case could not represent a resolution on the merits, and petitioner cannot successfully challenge his conviction under an *autrefois acquit* theory. Similarly, petitioner cannot invoke the doctrine of collateral estoppel where there has not been a final judgment on the merits. *See Moore v. United States*, 360 F.2d 353 (4th Cir. 1966), *cert. denied*, 385 U.S. 1001, 87 S.Ct. 704, 17 L.Ed.2d 541 (1967); *Graves v. Associated Transport, Inc.*, 344 F.2d 894 (4th Cir. 1965).

■ Petitioner's double jeopardy argument therefore rests on whether or not jeopardy attached with the swearing in of the officer. If jeopardy did attach, a dismissal other than for manifest necessity would bar subsequent prosecution. *See McNeal v. Hollowell*, 481 F.2d 1145 (5th Cir.), *cert. denied*, 415 U.S. 951, 94 S.Ct. 1476, 39 L.Ed.2d 567 (1973). Petitioner relies on *Crist v. Bretz*, in which the Court stated that jeopardy attaches in nonjury trials when the first witness is sworn. 437 U.S. at 37 & n. 15, 98 S.Ct. at 2161. Respondent, in his reply, characterizes the *Crist* language as "an abbreviated and imprecise summary of the decision reached in *Serfass*." *See* Respondent's Answer at 4. Respondent points to the actual terms used in *Serfass*, "when the court begins to hear evidence" and when the defendant is "put to trial before the trier of facts," as the correct test for when jeopardy attaches. *Serfass*, 420 U.S. at 388, 95 S.Ct. at 1062.

A survey of the cases and the literature reveals that both the *Crist* and *Serfass* formulations are commonly used to pinpoint the time at which jeopardy attaches in nonjury trials. *Compare Lee v. United States*, 432 U.S. 23, 33, 97 S.Ct. 2141, 2147, 53 L.Ed.2d 80 (1977) (jeopardy attaches when court begins to hear evidence), *and Harris v. Young*, 607 F.2d 1081 (4th Cir. 1979), *cert. denied sub nom. Mitchell v. Harris*, 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980)(same) *with Willhauck v. Flanagan*, 448 U.S. 1323, 1326, 101 S.Ct. 10, 12, 65 L.Ed.2d 1147 (1980)(jeopardy attaches when first witness is sworn) *and* C. Whitebread, Criminal Procedure 485 (1980) (same). Both *Crist* and *Serfass* are cited in support of either formulation, leading to the conclusion that the terms are, in fact, interchangeable, and that a defendant is " 'put to trial before the trier of facts' . . . when the first witness is sworn." *United States v. Garcia*, 589 F.2d 249, 250–51 (5th Cir.), *cert. denied sub nom. Munoz v. United States*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979). Respondent argues that in this case, such a conclusion would elevate form over substance and allow a mechanical interpretation of the double jeopardy rule to protect a defendant who had not actually been placed at risk. A consideration of petitioner's trial and of district court procedures reveals to the contrary, however, that petitioner was indeed at risk in district court.

On petitioner's trial date, the district judge denied the prosecutor's motion for a *nolle prosequi* and elected to proceed to trial. When the prosecutor declined to call any witnesses, the judge, firm in his intention to try the case, called the complaining officer. The district judge had "jurisdiction to try the question of guilt or innocence of the accused." *Serfass*, 420 U.S. at 391, 95 S.Ct. at 1064. *See* Code of Virginia § 19.2–265.3 (1980 Supp.). All stages preliminary to trial had been completed. *See Rosser v. Commonwealth*, 159 Va. 1028, 167 S.E.2d 257 (1933) (person is in jeopardy when placed on trial before a court of competent jurisdiction, on a valid indictment, is arraigned, and has pleaded to the charge). The judge had the authority to call and question witnesses and enter a finding of guilt without any participation from the prosecutor at all. *See* Code of Virginia § 15.1–8.1 (1980 Supp.) (Commonwealth's Attorney may in his discretion prosecute misdemeanors). His decision not to question the witness cannot alter the fact that petitioner "risked a determination of guilt," *United States v. Barta*, 635 F.2d 999, 1004 (2d Cir. 1980), once the judge elected to try the case.

■ Although the informality of procedures at the district court level may sometimes obscure what stage a case has reached, petitioner here has met his burden of showing that he was put to trial. *See Moore v. Commonwealth*, 218 Va. 388, 237 S.E.2d 187 (1977)(defendant could not prevail on double jeopardy claim where he failed to show that the district court had moved from the preliminary hearing stage to trial on the misdemeanor). The misdemeanor had been set for trial, the motion to *nolle prosequi* denied, and the first witness sworn. Without a doubt, petitioner was at trial. Jeopardy does not attach only when the attempt to convict reaches a certain level of seriousness, but when there is any attempt at all.

The conclusion that jeopardy had attached does not rest on a "mechanical, formalistic view of the events," *see* Respondent's Answer at 6, but on the "at risk"

concept at the core of the double jeopardy bar. *See Breed v. Jones*, 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975) ("jeopardy denotes risk"). The constitutional prohibition against double jeopardy guarantees that an individual will not be "subjected to the hazards of trial and possible conviction more than once for an alleged offense," whether that trial occurs in state or federal court. *Serfass*, 420 U.S. at 387–88, 95 S.Ct. at 1061–62. Petitioner here was in danger of conviction, and it is not an exercise in arbitrary line drawing to extend to him the protection against double jeopardy guaranteed by the Fourteenth Amendment.

■ Given that jeopardy had attached, the state could retry petitioner only if the dismissal was for manifest necessity. *See United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). The sole reason offered by the prosecutor for not going forward with the evidence in this case was his desire to prosecute petitioner on the felony instead. It is, however, the judge, not the prosecutor, who has the discretion to either *nolle prosequi* a case or proceed to trial. The prosecutor's attempt to substitute his decision for that of the judge cannot supply the manifest necessity required to justify retrial. Further, upon the prosecutor's refusal to examine the witness, the judge could have continued the case rather than dismissing it. The dismissal, after jeopardy had attached, should have barred any subsequent prosecution, and petitioner is entitled to the relief requested.

■ As his second ground for relief, petitioner claims that he was convicted on the basis of illegally obtained self-incriminating statements. The undisputed facts are that Officer Joca of the Alexandria Police Department had a capias for the arrest of petitioner in connection with a domestic matter. Upon spotting petitioner on the street, she informed him of the capias and invited him to rid himself of any small amounts of contraband before she took him to headquarters for processing. When petitioner hesitated, she asked him how much he had on him, to which he responded "a

lot." *See* January 10, 1980 Trial Transcript at 10. At that point Officer Joca handcuffed and frisked petitioner, detecting a soft substance along the sides of both legs. At headquarters another officer searched petitioner and recovered fifteen coin-sized manilla envelopes of marijuana from his pants pockets and his socks. This officer testified that the search was conducted in accordance with the customary police department practice of routinely searching arrestees as part of the booking process. *See* Transcript at 29.

Officer Joca admits that she did not advise petitioner of his *Miranda* rights. *See* Transcript at 13. Petitioner's statement that he had "a lot" of contraband on him was, however, excluded at trial, so that petitioner's Fifth Amendment claim rests on the premise that the subsequent discovery of the marijuana was a fruit of his illegally obtained confession. Respondent's contentions that Officer Joca's questioning was neither custodial nor interrogational hold little merit. The transcript reveals that Officer Joca was in the process of arresting petitioner. He was not free to leave. In addition, whatever the intended purpose behind her questions, clearly, they "were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 303, 100 S.Ct. 1682, 1691, 64 L.Ed.2d 297 (1980). Respondent's final contention and the position taken by the trial judge is that the drugs would have inevitably been discovered during the customary search that accompanies booking, and that therefore the drugs have a source independent of the tainted confession.

■ The fruit of the poisonous tree doctrine applies only where the evidence seized "would not otherwise have been detected." *United States v. Young*, 512 F.2d 321, 323 (4th Cir. 1975). The officer's testimony that the police department searches arrestees as a regular part of the booking process adequately established an independent source for the seizure of the drugs where petitioner had been properly arrested on a capias. *See United States v. Evans*, 454 F.2d 813 (8th Cir.), *cert. denied*, 406 U.S.

969, 92 S.Ct. 2423, 32 L.Ed.2d 668 (1972) (government would have discovered information anyway as part of its investigation). For this reason, the judge correctly denied the motion to suppress the drugs.

■ Petitioner raises as his third ground for relief a claim that he was illegally searched. Petitioner had the opportunity to present this claim both at trial and in his petition for writ of error to the Virginia Supreme Court. In order to obtain federal habeas corpus review on this issue, he must establish that the state system did not afford him "an opportunity for full and fair litigation." *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976). *See Doleman v. Muncy*, 579 F.2d 1258 (4th Cir. 1978) (burden is on petitioner). As petitioner has not met this burden the court will not consider his Fourth Amendment claim.

■ Petitioner's final complaint is that the evidence was insufficient to support his conviction. The standard of review to be applied is whether a rational trier of fact could have found petitioner guilty beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Circumstantial evidence may support a finding of guilt even though it does not exclude every reasonable hypothesis of innocence. *See United States v. Bobo*, 477 F.2d 974 (4th Cir. 1973), *cert. denied*, 421 U.S. 909, 95 S.Ct. 1557, 43 L.Ed.2d 774 (1975); *United States v. Chappell*, 353 F.2d 83 (4th Cir. 1965). Here, although the presence of fifteen small packets of marijuana does not inevitably lead to the conclusion that petitioner intended to sell them, a rational trier of fact could so conclude beyond a reasonable doubt.

Although petitioner's claims based on his confession, on the search and seizure and on the sufficiency of the evidence do not establish grounds for habeas corpus relief, the facts do reveal that he was subjected to double jeopardy, and he will be granted relief on the ground.