**Phillip Wayne CARLSON, Petitioner,**

v.

**Alfred E. FERGUSON, Judge of the Sixth Judicial Circuit Court of the State of West Virginia and Darrell V. McGraw, Jr., Attorney General of the State of West Virginia, Respondent.**

No. CIV. A. 3:97–1086.

United States District Court,
S.D. West Virginia,
Huntington Division.

Feb. 18, 1998.

**970**

George A. Stolze, Huntington, WV, for Petitioner.

Scott E. Johnson, Dawn E. Warfield, Office of Attorney General, Charleston, WV, for Respondents.

## MEMORANDUM OPINION AND ORDER

CHAMBERS, District Judge.

Phillip Wayne Carlson ("Petitioner") seeks a writ of habeas corpus from this Court pursuant to 28 U.S.C. § 2254. Petitioner bases his habeas claim on Article 3, Section 6 of the West Virginia Constitution and on the Fourth Amendment to the United States Constitution.

### I.

### FACTUAL AND PROCEDURAL HISTORY

Petitioner was convicted of three (3) counts of burglary in the Circuit Court of Cabell County, West Virginia, on September 7, 1995 following a two (2) day jury trial. Cabell County Circuit Judge Alfred E. Ferguson presided over the trial.[1] Throughout the trial, Petitioner was represented by counsel. Prior to the trial, the circuit court held a suppression hearing to consider two related issues presented by Petitioner. The first issue presented was whether the police had probable cause to arrest Petitioner for suspicion of burglary. The second issue was whether a taped confession obtained shortly after Petitioner's arrest was admissible if the police lacked probable cause to arrest Petitioner. Petitioner was represented by counsel at the suppression hearing.

During the suppression hearing, the State introduced three witnesses. One witness, April Coiner, testified that upon returning home from school on February 23, 1995, she discovered that her house on Balls Branch Road in Culloden, Cabell County, West Virginia had been ransacked. After hearing noises emanating from her back door, Ms. Coiner dialed 911. A police dispatcher told her that the person who ransacked her home still might be in her house so Ms. Coiner fled to a neighbor's house where she reestablished contact with the dispatcher. As she was speaking with the dispatcher, she saw a person apparently peering into her garage. Ms. Coiner noticed that this person was wearing a T-shirt, shorts, boots and a plastic bag as a raincoat. Ms. Coiner relayed this description to the police dispatcher. Approximately, ten (10) or fifteen (15) minutes had elapsed since she discovered the condition of her

---

**1.** On July 31, 1996, Judge Ferguson sentenced Petitioner to three consecutive one (1) to fifteen year (15) terms. The sentence was suspended and Petitioner was credited for time served. Petitioner also was placed on probation for a period of five (5) years. As a special condition of Petitioner's probation, Judge Ferguson banned Petitioner from West Virginia for the duration of Petitioner's probationary sentence.

house. Soon after, a deputy sheriff arrived at the scene and Ms. Coiner told him that the person she saw peering into her garage had just entered the woods near her house.

A second witness, Cabell County Deputy Sheriff Roman Thompson testified that on January 23, 1995, he was sent by a police dispatcher to investigate a possible burglary at the home of April Coiner on Balls Branch Road in Culloden, Cabell County, West Virginia. The police dispatcher described the burglary suspect as a white male wearing a T-shirt, shorts, boots and a plastic bag. As he was driving to the scene of the alleged burglary, he noticed a man fitting the police dispatcher's description walking along Balls Branch Road. As Deputy Thompson approached Ms. Coiner's house, "some girls" pointed at the man walking along the road and indicated that he was the burglary suspect. Deputy Thompson entered the woods in pursuit of the suspect and spotted Petitioner near a reservoir in the woods. Deputy Thompson yelled "Stop" at Petitioner, but Petitioner ignored this order. Deputy Thompson drew his revolver and shouted again at Petitioner. Petitioner responded by indicating that he did not know Deputy Thompson was speaking to him. Deputy Thompson then arrested Petitioner.

The final witness, Sergeant Bob Adkins, testified that he arrived at the alleged burglary scene after Petitioner's arrest. Sergeant Adkins indicated that he administered Miranda warnings to Petitioner before asking Petitioner whether he was willing to provide the police with a statement. Sergeant Adkins testified that Petitioner indicated a desire to waive his Fifth Amendment rights. Sergeant Adkins questioned Petitioner and recorded his responses on tape including Petitioner's admission of guilt.

Petitioner's counsel cross-examined each of the three (3) witnesses. At the conclusion of the State's testimony, Judge Ferguson asked Petitioner's counsel whether he intended to present any evidence. Petitioner's counsel declined to present any evidence and indicated that a defendant in a criminal action is not required "to prove anything." Judge Ferguson then found that the police officer had probable cause to arrest Petitioner.[2] After finding by a preponderance of the evidence that Petitioner had provided a knowing and voluntary waiver of his Fifth Amendment rights, Judge Ferguson denied Petitioner's motion to suppress the taped confession.

Petitioner filed a petition for appeal of his conviction with the West Virginia Supreme Court of Appeals. On appeal, Petitioner presented two issues. The issues presented on appeal were identical to the claims raised at the suppression hearing. On February 26, 1997, the West Virginia Supreme Court of Appeals declined to hear Petitioner's appeal. Having properly exhausted his claims before the State court,[3] Petitioner seeks a writ of habeas corpus from this Court.

## II.

## ANALYSIS

### A.

### WEST VIRGINIA CONSTITUTIONAL CLAIMS

■ Petitioner argues that the State trial court's determination that the police had probable cause to arrest him runs contrary to the West Virginia Constitution. Petitioner cites several West Virginia Supreme Court of Appeals' decisions in support of his proposition. However, Petitioner's argument fails to recognize the limited nature of the writ of

---

**2.** In habeas proceedings, factual determinations made by a state court are presumed to be correct unless the petitioner rebuts the presumption by clear and convincing evidence. In this case, Judge Ferguson's findings were based on the testimony of the State's witnesses and Petitioner has proffered no evidence to dispute Judge Ferguson's factual findings. Therefore, the Court must accept his findings as correct. 28 U.S.C. § 2254(e)(1).

**3.** For a discussion of applicable exhaustion doctrine, see *Moore v. Kirby*, 879 F.Supp. 592 (S.D.W.Va.1995). A federal court also may deny an application for habeas corpus on the merits even if a petitioner has failed to exhaust all available state court remedies. 28 U.S.C. § 2254(b)(2).

habeas corpus and the federal court's limited role in applying the writ.

■ A district court may entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court *only* on the ground that the person is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A determination that a state trial judge correctly or incorrectly interpreted state law is a question for a state appellate court. A federal district court is without jurisdiction to review questions of state law in the context of a habeas corpus petition. *See Kohl v. Lehlback,* 160 U.S. 293, 298, 16 S.Ct. 304, 40 L.Ed. 432 (1895); *see also Franklin v. Conway,* 546 F.2d 579, 582 (4th Cir.1976). A federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States. *See Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991).

In accordance with well-established precedent, this Court FINDS that it is without jurisdiction to review the State trial court's interpretation of probable cause as defined by the West Virginia Supreme Court of Appeals and Article 3, Section 6 of the West Virginia Constitution.

### B.

### FOURTH AMENDMENT CLAIMS

Petitioner also contends that the State trial court's determination regarding probable cause violates the Fourth Amendment to the United States Constitution. In evaluating Petitioner's Fourth Amendment claims, the Court must look within the parameters of recently enacted Congressional legislation.

The relatively new Antiterrorism and Effective Death Penalty Act[4] ("AEDPA") expressly forbids a federal district court from granting an application for a writ of habeas corpus with respect to any claim that was adjudicated on the merits in a state court proceeding. 28 U.S.C. § 2254(d). Although

this rule may alter a federal court's analysis of most Constitutional claims, it is hardly new law in the Fourth Amendment context. *See Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Since the Supreme Court's decision in *Powell,* federal courts have been unable to grant a writ of habeas corpus based on a violation of the Fourth Amendment where the petitioner was provided a full and fair opportunity to litigate his Fourth Amendment claim before the state court. *Id; see also Doleman v. Muncy,* 579 F.2d 1258, 1265 (4th Cir.1978).

The AEDPA's provision barring a federal court from granting a writ of habeas corpus for any claim that was adjudicated on the merits in a state court proceeding apparently has expanded the *Powell* framework to all federal claims. 28 U.S.C. § 2254(d). The expansion of the *Powell* framework implies a greater degree of federal court deference to the state court adjudication process. *See generally Parker v. Angelone,* 959 F.Supp. 319, 323 (E.D.Va.1997). However, the new amendments also preserve the duty of the federal courts to examine the integrity of the state court process. *See generally Doleman,* 579 F.2d at 1265. Under the new amendments, only two circumstances permit a federal court to grant a writ of habeas corpus to an applicant whose claims were adjudicated on the merits in state court. A federal district court may grant a habeas petition after a state court adjudication if the state court reached a decision that contravened or unreasonably applied clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). A federal court also may grant a habeas petition after a state court adjudication if the state court proceeding resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the same state court proceeding. 28 U.S.C. § 2254(d)(2).

■ Proper evaluation of all habeas claims requires a federal court to employ the AEDPA's two-tiered analytical approach. Once a

---

4. The Antiterrorism and Effective Death Penalty Act ("AEDPA") was signed into law on April 24, 1996. Because Petitioner filed his habeas application after April 24, 1996, the AEDPA applies to

this case. *See Breard v. Pruett,* 134 F.3d 615 (4th Cir.1998); *see also Lindh v. Murphy,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

federal court finds that a claim has been adjudicated on the merits in state court, the federal court then must examine the record to determine if the state court's decision contravened clearly established Supreme Court interpretation or if the state court reached a result that involved an unreasonable interpretation of the facts in light of the evidence presented. *See Angelone*, 959 F.Supp. at 321.

■ In applying the AEDPA's analytical approach to the instant case, the Court concludes that Petitioner's application for a writ of habeas corpus must be denied. Prior to Petitioner's trial, Judge Ferguson held a suppression hearing to adjudicate Petitioner's Fourth Amendment probable cause claims. The Court has carefully reviewed the transcript of that hearing, where the facts surrounding the probable cause issue were developed through the three testifying witnesses. Cross-examination of all three witnesses was conducted, and the Petitioner declined to present any evidence. Nothing in the record indicates that Judge Ferguson in any way impeded Petitioner's opportunity to adjudicate his Fourth Amendment claims. Based on the information contained in the record, the Court FINDS that Petitioner's Fourth Amendment claims were adjudicated on the merits in State court. The Court now turns to the issue of whether Judge Ferguson's decision contravenes Supreme Court precedent or reflects an unreasonable determination of the facts as presented at the hearing.

■ The Supreme Court has long held that warrantless arrests of individuals are permitted if an officer has probable cause to believe that a felony has been committed. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Probable cause to justify an arrest "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the

suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). In this case, the information provided by April Coiner and the dispatcher coupled with the proximity in time and distance to the commission of the offense more than establishes a sufficient basis in fact for Judge Ferguson to conclude that Deputy Thompson had probable cause under the Supreme Court's interpretation of the Fourth Amendment to arrest Petitioner. Hence, the Court FINDS that Judge Ferguson's decision did not contravene clearly established federal law as interpreted by the Supreme Court and did not involve an unreasonable application of the facts in light of the evidence presented.[5]

## III.

## CONCLUSION

In accordance with its findings, the Court **DENIES** the Petitioner's application for a writ of habeas corpus. The Court further **ORDERS** that this matter be **DISMISSED** and that judgment be entered in favor of the Respondents.

---

5. Because Judge Ferguson's finding of probable cause is not an unreasonable interpretation of the evidence or Supreme Court precedent, the Court need not address Petitioner's claim that his custodial statements were the product of an illegal arrest. *See generally Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *see also Cardwell v. Taylor*, 461 U.S. 571, 103 S.Ct. 2015, 76 L.Ed.2d 333 (1983).