**Johnnie Ray GRIMSLEY, Appellee,**

v.

**Ray M. DODSON, Sheriff; J. Marshall Coleman, Attorney General of Virginia, Appellants.**

**No. 81–6778.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 5, 1982.

Decided Dec. 15, 1982.

Robert E. Bradenham, II, Asst. Atty. Gen., Richmond, Va. (Marshall Coleman, Atty. Gen., Richmond, Va., on brief), for appellants.

Stephen A. Saltzburg, Charlottesville, Va. (Richard C. Mapp, III, University of Virginia School of Law, Charlottesville, Va., on brief), for appellee.

Before WIDENER, ERVIN and CHAPMAN, Circuit Judges.

WIDENER, Circuit Judge:

This appeal arises from the grant of a writ of habeas corpus to Johnnie Ray Grimsley, a state prisoner in Virginia, peti-

tioner below and appellee here. We reverse.

In 1979, Grimsley was on state probation following 1973 convictions for grand larceny in Page and Rockingham Counties, Virginia. In September of that year, deputies from Page County, Virginia, accompanied by Grimsley's probation officer, searched Grimsley's residence pursuant to a search warrant. The search produced firearms and marijuana. Grimsley was subsequently charged with possession of the marijuana, a controlled substance. At the criminal trial for possession of marijuana, Grimsley successfully moved to suppress the evidence seized during the search on the ground that the affidavit upon which the warrant was based was insufficient. The Commonwealth's motion for nolle prosequi on the marijuana charge was then granted.

The probation officer then sought to revoke Grimsley's probation. At the probation revocation hearing, evidence suppressed in the criminal proceedings was held admissible following a ruling by the trial judge that the exclusionary rule did not apply to probation revocation proceedings. Grimsley's probation was revoked because he possessed firearms in violation of the conditions of his probation. Grimsley unsuccessfully sought an appeal of his probation revocation to the Virginia Supreme Court.[1] Apparently no petition for certiorari was filed in the United States Supreme Court, at least the record does not reveal it.

Grimsley then sought a writ of habeas corpus in the district court on the ground that the suppressed evidence had been introduced at his probation revocation hearing in violation of his Fourth and Fourteenth Amendment rights. The district court agreed, concluding that our opinion in *United States v. Workman,* 585 F.2d 1205 (4th Cir.1978), which held the exclusionary rule applicable to federal probation revocation hearings, created a constitutional principle applicable to state courts. It granted a writ of habeas corpus to Grimsley.

*Grimsley v. Dodson,* 523 F.Supp. 99 (W.D. Va.1981).

The Commonwealth appeals, arguing that *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), bars the district court's examination of Grimsley's Fourth Amendment claims in a petition for federal habeas corpus relief. The district court rejected this argument, concluding that *Stone* was designed to prevent federal courts from reviewing state court determinations regarding the admissibility of evidence under the Fourth Amendment. Here, it reasoned, a different situation existed because the state court had already ruled in Grimsley's favor regarding the admissibility of the evidence and the question raised in the habeas corpus petition was the constitutional effect of that ruling. 523 F.Supp. at 103. We disagree and conclude that *Stone v. Powell* barred the district court from consideration of Grimsley's Fourth Amendment claim.

*Stone v. Powell,* supra, marked, for most practical purposes, the end of federal court reconsideration of Fourth Amendment claims by way of habeas corpus petitions where the petitioner had an opportunity to litigate those claims in state court. The Court stated at 494, 96 S.Ct. at 3052 that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (Footnotes omitted).

We think *Stone* applies to the case before us. Grimsley had an opportunity to litigate the introduction of the evidence at his probation revocation hearing. In fact, he vigorously sought its suppression. The state trial court ruled against Grimsley on the matter, which ruling was affirmed by the Virginia Supreme Court's refusal to grant a writ of error. Once the determination was made that Grimsley had the opportunity for a full and fair consideration of the question in state court and that such opportunity

---

1. The transcripts of the Page County hearing on probation revocation were introduced by agreement in the later Rockingham County proceeding. The proceedings were in all respects the same for any purpose considered here.

was not impaired, the district court should not have inquired further into the merits of a petitioner's Fourth Amendment claim. See *Doleman v. Muncy,* 579 F.2d 1258 (4th Cir.1978).

Grimsley nevertheless asks us to affirm on the district court's conclusion that *Workman*'s holding is a constitutional rule and thus binding upon the States. 523 F.Supp. at 103. One difficulty with the district court's conclusion is that the Supreme Court in *Stone,* at two places, explicitly decided that the exclusionary rule is "not a personal constitutional right." 428 U.S. at 486, 96 S.Ct. at 3048. Rather, it is "a judicially created remedy." 428 U.S. at 465, n. 37, 96 S.Ct. at 3053 n. 37. So all that *Workman* could have decided, and did decide, was that the exclusionary rule applied to Fourth Amendment violations in federal probation proceedings.

*Stone v. Powell* left the exclusionary rule intact in direct appeals in criminal proceedings, as the concurring opinion of the Chief Justice makes clear, 428 U.S. at 496, 96 S.Ct. at 3053 et seq., and the petitioner in this case was perfectly free to file his petition for certiorari in the United States Supreme Court had he so decided. The petitioner here admittedly had had full and fair litigation of his Fourth Amendment claim. Indeed, he was successful in securing the nolle prosequi of his indictment, almost certainly on that account. He has presented his Fourth Amendment claim both to the trial court and the Virginia Supreme Court in the context of his probation revocation. The proceedings to revoke his probation on the previous larceny charges are no more than a continuation of the proceedings of those previous criminal convictions. In those proceedings, rulings on evidence obtained in an unconstitutional search or seizure would not have been subject to federal reexamination by way of habeas corpus, although the Fourth Amendment claim was subject to direct appeal. Since federal habeas corpus relief would not be available on account of the illegally obtained evidence in a criminal proceeding, no reason exists to make it available where revocation of probation is involved. Indeed, if the two must be compared, it seems there is less reason to apply the exclusionary rule in a probation proceeding, for, while it is true that in both proceedings the liberty of the petitioner is at stake, in the criminal case the petitioner is also subjected to conviction of felony.

Thus, we think that *Stone v. Powell* does not permit a federal habeas corpus court to reexamine under the Fourth Amendment the admissibility of the evidence offered against the petitioner in his Virginia probation revocation proceedings, and we hold that the exclusionary rule does not apply to those proceedings.

The judgment of the district court is accordingly

REVERSED.

ERVIN, Circuit Judge, concurring:

The court holds that the grant of a writ of habeas corpus to Johnnie Ray Grimsley was incorrect. Because the Supreme Court's decision in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), forbade precisely the type of federal collateral review of state court determinations engaged in by the district court, I concur in the judgment of the court. I write separately to indicate my disagreement with what I perceive to be a misreading of our decision in *United States v. Workman,* 585 F.2d 1205 (1978).

I.

In late 1979, Grimsley was on probation pursuant to his multiple convictions in courts of the Commonwealth of Virginia for grand larceny. His probation officer received information in September that Grimsley had marijuana in his home and was growing it on his property. The probation officer contacted a Page County deputy sheriff and together they applied to a local magistrate for a search warrant. The warrant was issued to the deputy, and pursuant to it the probation officer, the deputy, and other officers searched Grimsley's house. The search uncovered marijuana

and a rifle, both items forbidden to Grimsley under the terms of his probation.

Grimsley was indicted for possession of marijuana in Page County circuit court. The Commonwealth, however, dismissed the indictment after the circuit court judge granted Grimsley's motion to suppress the evidence seized in the search. The judge found that the search was unlawful because the affidavit supporting the search warrant was legally insufficient and therefore applied the exclusionary rule.

Grimsley's probation officer then sought the revocation of Grimsley's probation for possession of marijuana and a firearm. Grimsley moved to exclude the evidence seized in the search, which evidence, the Commonwealth concedes, was the sole basis for the revocation proceedings. The state court acknowledged that the evidence was the result of an unlawful search, but held that the exclusionary rule is not ordinarily applicable to probation revocation hearings. The state judge distinguished *United States v. Workman* as an exercise of the supervisory powers of a federal court of appeals over the administration of criminal justice in federal courts. Finding that the violation of Grimsley's constitutional immunity from unreasonable searches was inadvertent, the court denied Grimsley's motion and admitted the evidence. As a result, Grimsley's probation was revoked and he was incarcerated.

Grimsley sought federal habeas corpus relief under 28 U.S.C. § 2254. The district court held that the state court's interpretation of *Workman* was incorrect, and that our decision in that case rested on constitutional grounds. The district court further held that *Stone v. Powell* did not preclude collateral review of Grimsley's claim because the state had failed completely to apply the constitutional standard established in *Workman*. Therefore, the court granted a writ of habeas corpus to Grimsley. 523 F.Supp. 99 (W.D.Va.1981).

## II.

On appeal by the Commonwealth, this court reverses the judgment of the district court, concluding that *Stone v. Powell* barred the district court from consideration of Grimsley's Fourth Amendment claim. I agree with this conclusion. The Supreme Court in *Stone v. Powell* held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976). Although read literally this holding does not cover Grimsley's petition—his complaint is not that unconstitutionally obtained evidence was introduced at his *trial*—it follows logically that federal habeas corpus relief is unavailable to remedy an error in a probation revocation hearing where it is unavailable to correct an error at trial. *See Gagnon v. Scarpelli,* 411 U.S. 778, 789, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656 (1973) (due process rights of probationer in revocation hearing are more limited than those of accused in criminal trial).

The crucial question to be answered when a state prisoner raises an exclusionary rule argument in a federal habeas petition is whether the petitioner was afforded "an opportunity for full and fair litigation" of his claim in the state proceedings. *Doleman v. Muncy,* 579 F.2d 1258, 1264–1265 (4th Cir.1978). If the "then existing state practice" provided the petitioner with a "procedural vehicle" for raising his claim, the district court need not inquire further, absent some allegation that the petitioner was inhibited unfairly from taking advantage of this opportunity. *Id.* In this case, it is unquestioned that Grimsley was able to argue his claim before the state court on motions to suppress the evidence at both the trial and the revocation hearing. From the record, and from the fact that Grimsley's initial suppression motion was granted, it is evident that the circuit court judge[1] gave Grimsley's claim careful consideration.

---

1. The same judge presided over both the trial and the probation revocation hearing.

Furthermore, the Commonwealth provided Grimsley with an opportunity (by petition for leave to appeal) for appellate review of the circuit court's decision. In these circumstances, Grimsley was afforded an opportunity for full and fair litigation of his "Fourth Amendment claim,"[2] and consequently the district court was barred from reviewing that claim.

The district court suggested that *Stone v. Powell* is inapplicable where "the state court ignores the proper constitutional standard." 523 F.Supp. at 103. The court cited as authority for this proposition the decision in *Gamble v. Oklahoma,* 583 F.2d 1161 (10th Cir.1978). In that case, the Court of Appeals for the Tenth Circuit affirmed an order granting a state prisoner a writ of habeas corpus despite the state's argument that *Stone v. Powell* precluded such relief. The court of appeals found that the Oklahoma courts had refused utterly to apply the Supreme Court's ruling in *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), although that decision was directly applicable to the facts in *Gamble.* The court reasoned that *Stone v. Powell* contemplated

> recognition and at least colorable application of the correct Fourth Amendment constitutional standards. Thus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court wilfully refuses to apply the correct and controlling constitutional standards. Deference to state court consideration of Fourth Amendment claims does not require federal blindness to a state court's wilful refusal to apply the appropriate constitutional standard.

583 F.2d at 1165. No other court of appeals has followed *Gamble* as yet. *But see United States ex rel. Maxey v. Morris,* 591 F.2d 386, 390 (7th Cir.1979) (distinguishing *Gamble*); *Dunn v. Rose,* 504 F.Supp. 1333, 1337 (M.D.Tenn.1981) (dictum) (following *Gamble*). While I find *Gamble* highly persuasive, I do not think it necessary now to resolve the validity of that decision as an interpretation of *Stone v. Powell.* There are important factual distinctions between *Gamble* and the present case. In *Gamble,* the state courts disregarded a controlling Supreme Court precedent, both ignoring its existence and applying "the very standard [the Supreme Court] rejected." *Gamble,* 583 F.2d at 1165. In contrast, the state judge at Grimsley's probation revocation hearing explicitly considered and distinguished the precedential basis for Grimsley's claim, our decision in *Workman.* The exact import of that decision is unclear, as my disagreement with my colleagues about its meaning illustrates, *see infra.* Furthermore, *Workman,* even as I read it, is only this court's interpretation of the Constitution's ban on unreasonable searches, and not the authoritative Supreme Court construction of the fourth and fourteenth amendments which was ignored in *Gamble.* *Stone v. Powell* forbids collateral review of state court exclusionary rule decisions "merely because the federal courts would decide the issue differently." *Maxey,* 591 F.2d at 389; *accord, Pignone v. Sands,* 589 F.2d 76, 80 (1st Cir.1978); *Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir.1977) (*en banc*), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978); *Swicegood v. Alabama,* 577 F.2d 1322, 1324 (5th Cir.1978); *Hines v. Auger,* 550 F.2d 1094, 1097 (8th Cir.1977); *Mack v. Cupp,* 564 F.2d 898, 902 (9th Cir.1977). Therefore, it was improper for the district court to issue the writ in reliance on the *Gamble* exception to the rule of *Stone v. Powell.*

### III.

The precedential foundation for Grimsley's exclusionary rule argument and for the district court's application of *Gamble* was our decision in *United States v. Workman,* 585 F.2d 1205 (1978), holding the ex-

---

2. The constitutional focus of Grimsley's claim is, of course, the fourteenth amendment. Because that amendment's prohibition on unreasonable searches and seizures by state authorities is identical to the fourth amendment's restriction on the federal government, attempts to invoke the exclusionary rule in state proceedings are often referred to as "fourth amendment" claims.

clusionary rule applicable in a federal probation revocation hearing. The state circuit court judge interpreted *Workman* as a decision based on this court's general supervisory powers over the administration of federal criminal justice in this circuit rather than on the Constitution. In light of the statement in the majority's opinion that "we hold that the exclusionary rule does not apply to [state probation revocation] proceedings," it would appear that the majority endorses this view of *Workman*. Since the constitutional ban on unreasonable searches and seizures is identical whether applied to state officers under the fourteenth amendment or to federal officers under the fourth, this "holding" [3] necessarily construes *Workman* as a nonconstitutional exercise of our supervisory power.

I do not read *Workman* in this way. That decision applied the test prescribed by *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), for determining whether the exclusionary rule is necessary in a given setting. *Calandra* involved an attempt to invoke the exclusionary rule to avoid grand jury questions based on unlawfully obtained evidence. Weighing the damage that application of the rule might cause to the functions of the grand jury against the rule's potential for deterring unlawful actions, the Supreme Court concluded that extending the exclusionary rule to grand jury proceedings would do more harm than good and was not therefore mandated by the Constitution. *Id.* at 349–352, 94 S.Ct. at 620–622.

*Workman* followed the *Calandra* analysis closely. The Court stressed the similarities between a criminal trial, in which the exclusionary rule unquestionably applies, and a probation revocation hearing, and noted the Supreme Court's statement in *Calandra* that "the need for deterrence and hence the

rationale for excluding the evidence are strongest where the Government's unlawful conduct would result in imposition of a criminal sanction on the victim of the search." *Id.* at 348, 94 S.Ct. at 620. Since a probation revocation hearing is "a criminal proceeding that may result in the loss of liberty," 585 F.2d at 1209, the court ruled that the exclusionary rule applies where the individual whose probationary freedom the government seeks to revoke was the victim of the unconstitutional search. I am convinced that this ruling was grounded directly on the Constitution rather than on some discretionary power to supervise federal officers. This conviction is fortified by the observation that when *Workman* was once again appealed to this court after our initial decision, the court's opinion referred to "[t]he *unconstitutional* aspects of the revocation hearing" and to the "*constitutionally void* revocation proceeding." *United States v. Workman*, 617 F.2d 48, 51 (4th Cir.1980) (emphasis supplied). *Workman*, I submit, was an interpretation of the Constitution valid, to whatever extent it was correct at all, in all courts, state as well as federal.[4]

The majority's reading of *Workman* seems to stem from what I believe to be a misunderstanding of the Supreme Court's repeated statements that the exclusionary rule is not "a personal constitutional right" but rather is a "judicially created remedy." *See Stone v. Powell*, 428 U.S. at 486, 96 S.Ct. at 3048; *Calandra*, 414 U.S. at 348, 94 S.Ct. at 620; *United States v. Peltier*, 422 U.S. 531, 538, 95 S.Ct. 2313, 2318, 45 L.Ed.2d 374 (1975). The majority apparently believes this distinction to mean that the exclusionary rule is a nonconstitutional guideline for the admissibility of evidence, rather than a remedy necessary in many situations to effectuate individual constitutional rights. But this is not the meaning of the

---

**3.** The majority's language notwithstanding, the assertion that the exclusionary rule does not apply in state probation revocation hearings can be only dictum, and incorrect dictum at that if my reading of *Workman* is correct.

**4.** I recognize the difficulty in arguing against the interpretation of a decision propounded by a member of the panel that reached that deci-

sion in the first place. Nonetheless, a decision, like a poem, may say more than those involved in its genesis recognize. *See* T.S. Eliot, *The Frontiers of Criticism* 13 (1956) ("For myself, I can only say that a knowledge of the springs which released a poem is not necessarily a help towards understanding the poem.").

right/remedy distinction, which, I believe,[5] is addressed to a different issue, that of explaining why the exclusionary rule is necessary in some contexts but not in others. In some situations, preeminently that of a criminal trial, the rule is necessary to give substance to the systemic "right of the people" to security from unlawful searches and seizures.[6] If the government were permitted to obtain the conviction of a defendant by using evidence it obtained while subjecting the defendant to an unlawful search, the fourth amendment would be reduced to "a form of words." *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920) (Holmes, J.). The constitutional basis for the Supreme Court's extension of the exclusionary rule to the states in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), was the Court's belief that implementation of the fourteenth amendment's ban on unreasonable searches and seizures required application of the exclusionary remedy in state trials. Denial to the government of the benefits of unlawful searches will discourage future lawless acts, it is assumed, and will encourage law enforcement personnel "to incorporate Fourth Amendment ideals into their value system." *Stone v. Powell,* 428 U.S. at 492, 96 S.Ct. at 3051. Thus, the remedy is systemic, and is *consti-tutionally* necessary in criminal trials in order to effectuate the fourth and fourteenth amendments. It is not, however, the personal right of its particular beneficiaries. In other settings, where the judicial obligation to implement the Constitution's commands would be served only marginally by the exclusionary rule, and where the rule would impede severely other constitutionally ordained functions, *see, e.g., Calandra,* 414 U.S. at 353–354, 94 S.Ct. at 622–623 (grand jury proceedings); *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954) (use in criminal trial to impeach defendant), the remedy is unnecessary.

In the context of a probation revocation hearing, *Workman* held that the exclusionary rule is required in order to safeguard adequately fourth amendment rights. This court reasoned that application of the rule in that setting "will result in approximately the same potential for injury and benefit as its application in" criminal prosecutions. 585 F.2d at 1210. Since officials frequently will have alternative and complementary means for proceeding against a probationer after a search—a trial on new charges and a probation revocation hearing—the need for deterrence is especially acute. *Id.* at 1211.[7] To suppress the unlawfully obtained evidence in the *trial* while admitting it in

---

**5.** The meaning and effects of the right/remedy distinction are not without ambiguity. *See* O'Berry v. Wainwright, 546 F.2d 1204, 1221 (5th Cir.1977) (Goldberg, Cir. J., dissenting) (citation omitted):

> Whatever the precise significance of this unexplained limbo between remedies that are a "necessary incident" of a constitutional guarantee of individual liberty and those imposed under the Court's supervisory powers, *Stone* nevertheless made quite plain that defendants are still entitled to have state courts exclude evidence seized in violation of the fourth amendment, a requirement that must ultimately be derived from the Constitution. The fact that in some sense the exclusionary rule is not a "personal constitutional right" simply does not begin to explain in what circumstances federal habeas proceedings will remain unavailable when the state courts, in enforcing a procedural rule, refuse to consider the "remedy" *Stone* leaves intact.

**6.** The exclusionary rule's empirical value as a safeguard for the fourth and fourteenth amendments is frequently questioned. *See, e.g., Bi-*vens v. Six Unknown Named Agents, 403 U.S. 388, 412–424, 91 S.Ct. 1999, 2012–2018, 29 L.Ed.2d 619 (1971) (Burger, C.J., dissenting); M. Wilkey, "Enforcing the Fourth Amendment by Alternatives to the Exclusionary Rule," 95 F.R.D. 211 (1982). However, the Supreme Court in *Stone v. Powell* specifically reaffirmed, albeit with a discernible lack of enthusiasm, its long-held belief that the rule is necessary to enforcement of the Constitution. 428 U.S. at 493, 96 S.Ct. at 3051.

**7.** [When] the police at the moment of search know that a suspect is a probationer, they may have a significant incentive to carry out an illegal search even though knowing that evidence would be inadmissible in any criminal proceeding. The police have nothing to risk: If the motion to suppress in the criminal proceedings were denied, defendant would stand convicted of a new crime; and if the motion were granted, the defendant would still find himself behind bars due to revocation of probation. Thus, in such circumstances, extension of the exclusionary

the *hearing* allows the officials who violated the Constitution the fruits of their action, the incarceration of the victim of the search, and undermines the deterrent value of the initial suppression.[8]

The Commonwealth's brief to this court lays emphasis on its claim that a majority of the courts that have considered the question have rejected the position taken in *Workman*. It is true that many courts have refused to apply the exclusionary rule across the board in probation revocation hearings.[9] However, where the searching officer [10] is aware of the probationer's status, my reading of the cases indicates that most of these courts would require suppression of the evidence.[11]

> rule to the probation revocation proceeding may be necessary to effectuate Fourth Amendment safeguards.
>
> *United States v. Winsett*, 518 F.2d 51, 54 n. 5 (9th Cir.1975).

8.  Any rule, and whatever values the rule is designed to promote, must necessarily be compromised and its effectiveness reduced in direct proportion to the number of exceptions attached to it. As more exceptions are created to a rule's application, the weaker the rule becomes. It makes no sense to say that a probation revocation hearing exception to the exclusionary rule does not reduce the deterrent value of the rule. Inexorably it will.
    *State v. Lombardo*, 295 S.E.2d 399, 407 (N.C. 1982) (Exum, J., dissenting).

9.  *See* the cases collected in *Lombardo*, 295 S.E.2d at 405 nn. 5, 6. The Supreme Court has not yet addressed the issue.

10.  It is clear from the record that Grimsley's probation officer was the instigator of, and moving force behind, the search which led to the revocation of Grimsley's probation.

11.  The exclusionary rule is applied to all probation revocation hearings in four states. *See Grubbs v. State*, 373 So.2d 905 (Fla.1979) (on state constitutional grounds); *Adams v. State*, 153 Ga.App. 41, 264 S.E.2d 532 (1980); *Michaud v. State*, 505 P.2d 1399 (Okl.Cr.App. 1973); *Moore v. State*, 562 S.W.2d 484 (Tex.Cr. App.1978). Several courts specifically require the application of the rule where, as here, the officials conducting the search were aware of the probationer's status. *See United States v. Vandemark*, 522 F.2d 1019 (9th Cir.1975); *Thompson v. United States*, 444 A.2d 972 (D.C. 1982); *State v. Sears*, 553 P.2d 907 (Alaska 1976); *State v. Towle*, 125 Ariz. 397, 609 P.2d 1097 (1980); *People v. Watson*, 69 Ill.App.3d

## IV.

My conclusion is that *Workman* is not only a precedent of this court binding on this panel, but is a sound application of the fourth (and hence the fourteenth) amendment exclusionary rule. The apparent conflict between *Workman*'s understanding of the Constitution and that held by the Virginia courts, confusing as it must be to conscientious law enforcement officials, must await authoritative resolution by the Supreme Court, for *Stone v. Powell* forbids us to impose our view through the vehicle of habeas corpus. *See Mincey v. Arizona*, 437 U.S. 385, 403–404, 98 S.Ct. 2408, 2419–2420, 57 L.Ed.2d 290 (1978) (Marshall, J., concurring) (nonuniformity on fourth

497, 26 Ill.Dec. 19, 387 N.E.2d 849 (1979); *State v. Davis*, 375 So.2d 69 (La.1979); *People v. Jackson*, 46 N.Y.2d 171, 412 N.Y.S.2d 884, 385 N.E.2d 621 (1978); *State v. Lombardo*, 295 S.E.2d 399 (N.C.1982). Other courts have stated more generally that the rule should be applied where there is evidence of official harassment or bad faith. *See, e.g., United States v. Wiygul*, 578 F.2d 577 (5th Cir.1978); *United States v. Farmer*, 512 F.2d 160 (6th Cir.1975), *cert. denied*, 423 U.S. 987, 96 S.Ct. 397, 46 L.Ed.2d 305 (1975); *Harris v. State*, 270 Ark. 634, 606 S.W.2d 93 (Ark.App.1980); *People v. Wilkerson*, 189 Colo. 448, 541 P.2d 896 (1975); *Dulin v. State*, 169 Ind.App. 211, 346 N.E.2d 746 (1976); *State v. Proctor*, 16 Wash.App. 865, 559 P.2d 1363 (1977); *Hughes v. Gwinn*, 290 S.E.2d 5 (W.Va.1981). One state supreme court has indicated that it would require suppression of evidence gathered for the *purpose* of securing a probation revocation. *See State v. Nettles*, 287 Or. 131, 597 P.2d 1243 (1979). Justice Miller of the Supreme Court of Appeals of West Virginia has noted that "[a] reading of the cases in this field discloses that courts have been greatly troubled over this question.... I am aware of no court which has adopted an absolute *per se* rule that the exclusionary rule will never apply [in probation revocation hearings]." *Hughes v. Gwinn*, 290 S.E.2d at 11 n. 2 (Miller, J., concurring). *See also* 1 W. LaFave, *Search and Seizure* § 1.4(g) (1978) ("If the search is made by a person who is particularly responsible for the individual on conditional release, such as his probation officer or parole officer, then it is clear that there is a need to deter, for such persons will be primarily interested in the question of whether the individuals under their supervision will have their conditional release revoked rather than whether they will be convicted of a new offense.").

amendment questions obviously undesirable but, after *Stone v. Powell,* can be remedied only by the Supreme Court).[12]

I concur in the judgment of the court reversing the grant of the writ.

---

12. It is startling to be informed by the Attorney General of the Commonwealth that "[i]f the mandate of *Stone v. Powell* means that the state courts must correctly apply federal constitutional law, then *Stone v. Powell* becomes meaningless." Brief for Appellants at 8. *Stone v. Powell* could not and did not absolve state courts—or state executive officers—from their duty to apply the federal constitution cor-rectly. It would be an abuse of the trust our federal system places in state officials for the latter to utilize a procedural bar against federal collateral review in order to disregard with impunity federal constitutional standards. Intentional disregard of those standards would constitute a denial to a defendant of the opportunity for full and fair litigation mandated by *Stone v. Powell. See Gamble,* 583 F.2d at 1165.