Robert Williford **PRATT**, Petitioner,

v.

**UNITED STATES PAROLE COMMISSION**, Respondent.

No. 88–198–HC.

United States District Court,
E.D. North Carolina,
Raleigh Division.

March 21, 1989.

affect on this case. The court expresses no opinion as to the effects this legislation will have on future cases.

John Maxfield, Raleigh, N.C., for petitioner.

James Carpenter, Asst. U.S. Atty., Office of the U.S. Atty., Raleigh, N.C., for respondent.

## ORDER

JAMES C. FOX, District Judge.

This action is before the court on the United States Magistrate's memorandum and recommendation filed February 15, 1989.

More than ten days have elapsed since the Magistrate's recommendation was filed, and neither party has filed a response thereto as provided by law. The court's independent review of the record in the case has led to the conclusion that the Magistrate's recommendation is correct and in accordance with law and should, therefore, be accepted by the court. Accordingly, the same is hereby adopted by the court as its own, and for the reasons stated therein it is now

ORDERED that the petition be DISMISSED.

## MEMORANDUM AND RECOMMENDATION

WALLACE W. DIXON, United States Magistrate.

Petitioner, a federal inmate, initiated this action for the issuance of a writ of habeas corpus by application filed March 9, 1988. In sum, petitioner seeks an order of this court requiring the respondents to apply the exclusionary rule to his parole revocation proceeding. In this manner, petitioner opines that certain evidence considered by respondents in the parole revocation decision should have been and must now be suppressed such that his release date will be greatly advanced. After respondents interposed their initial pleading, petitioner moved for the appointment of counsel. As I viewed this case as likely raising a question of first impression in this circuit of whether the exclusionary rule is applicable to federal parole revocation proceedings, and in light of circuit authority holding the rule applicable to federal probation revocation proceedings, *see United States v. Workman,* 585 F.2d 1205 (4th Cir.1978), I directed the appointment of counsel for petitioner. Counsel for both sides have now filed their respective briefs, the last being received by the court on December 7. Thus, in this posture, the matter is ripe for disposition. To set the stage for what follows, the court will borrow heavily from the agreed-upon factual history adopted by the parties.

Petitioner was paroled from a life sentence imposed for bank robbery with assault and kidnapping on December 15, 1982, and was to remain under supervision for life. Thereafter, in August 1986, respondents learned that petitioner had violated parole conditions by travelling outside his district of supervision without permission, and by virtue of his arrest for possession of approximately four and one-half pounds of cocaine in Florida. Notwithstanding later notice that the cocaine charges had been *nol-prossed,* the parole commission nevertheless charged petitioner in a parole violator's warrant with leaving the district without permission and with trafficking in cocaine. Ultimately, petitioner admitted leaving the district but denied the trafficking charge, asserting that the cocaine which was found under the seat of a rental car he was driving had been left there by the previous user of the car. However, petitioner was found in violation on both charges resulting in a decision that parole be revoked and that he be required

to serve seventy (70) months.[1]

In this present action, petitioner claims the parole commission erred in holding him responsible for trafficking in cocaine. He contends that the *nol-pros* resulted from an unconstitutional search which disclosed the controlled substance and that the commission should be precluded by the exclusionary rule from considering that evidence in the revocation decision. In fact, it is a matter of record that the Florida trial court suppressed the cocaine and the prosecution then entered its *nolle prosequi* for that reason. Thus, petitioner's claim directly confronts the question of whether the exclusionary rule is applicable to federal parole revocation proceedings.

The operative facts which gave rise to the application of the exclusionary rule in petitioner's Florida proceeding in the first instance follows. Petitioner contends that in search for a car he could afford to buy, he came across an advertisement offering one for sale in Florida. Without obtaining his parole officer's consent to travel, he flew to Florida to see the car but that it turned out to be unsuitable. He then talked by telephone with his wife who alerted him to an alternative deal in another location in Florida, so he rented a car to go see about it. En route, he was stopped by a state trooper and issued a traffic violation warning. During the course of this encounter, the trooper asked for and received petitioner's permission to search the rental car. In two different locations within the car, the trooper found cocaine totalling in excess of four (4) pounds. Petitioner was formally charged with trafficking in cocaine, which charge, as noted, was finally dismissed on the prosecutor's *nolle prosequi* after the trial court suppressed the search and its fruits.[2]

Virtually every circuit which has considered the question has determined that the exclusionary rule does not apply to either probation or parole revocation hearings. *See Schneider v. Housewright,* 668 F.2d 366, 367–68 n. 4 (8th Cir.1981); *United States v. Frederickson,* 581 F.2d 711, 713–14 (8th Cir.1978); *United States v. Winsett,* 518 F.2d 51, 53–55 (9th Cir.1975); *United States v. Brown,* 488 F.2d 94, 95 (5th Cir.1973) (*per curiam*); *United States v. Hill,* 447 F.2d 817, 819 (7th Cir.1971); *United States ex rel. Sperling v. Fitzpatrick,* 426 F.2d 1161, 1163 (2d Cir.1970). Moreover, on several occasions, the Supreme Court has denied petitions for certiorari in cases holding that the rule does not apply to probation or parole revocation hearings. *United States v. Johnson,* 455 F.2d 932 (5th Cir.), *cert. denied,* 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (1972); *United States v. Farmer,* 512 F.2d 160, 162–63 (6th Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 397, 46 L.Ed.2d 305 (1975); *United States v. Bazzano,* 712 F.2d 826 (3rd Cir.1983) (*en banc*), *cert. denied sub nom. Mollica v. United States,* 465 U.S. 1078, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984). However, the Fourth Circuit Court of Appeals takes a different view.

In *United States v. Workman,* 585 F.2d 1205 (4th Cir.1978), the court concluded that a federal probation officer cannot conduct warrantless searches of a probationer's premises "whenever he has probable cause." *Id.,* 585 F.2d at 1207. *Workman* followed an earlier decision that same year by the same court concluding "that unless an established exception to the warrant requirement is applicable, a parole officer must secure a warrant prior to conducting a search of a parolee's place of residence even where, as a condition of parole, the parolee has consented to periodic and unannounced visits by the parole officer." *United States v. Bradley,* 571 F.2d 787, 789 (4th Cir.1978).[3]

---

**1.** Petitioner asserts that the trafficking charge has increased the time he must serve in imprisonment for violation of parole conditions from seven (7) months to seventy (70) months.

**2.** The record is not clear as to the proceedings which might have occurred before the trial court. The formal dismissal statement merely notes the trial court's suppression decision,

based on Florida appellate authority, followed by the *nolle prosequi.*

**3.** *Bradley* did not involve a parole revocation proceeding, but was a separate criminal prosecution for the unlawful possession of a firearm by a convicted felon. It might be argued, therefore, that *Bradley* is not pervasive authority requiring a warrant for a parole officer's search.

■ Obviously, I am loath to reach any decision contrary to controlling circuit authority, but I am convinced that developments since 1978 have worked a substantial change in the judicial view of the exclusionary rule. Accordingly, for reasons which I will attempt to articulate below, I believe that neither *Workman* nor *Bradley* inform the correct decision here. Furthermore, my view is that the exclusionary rule does not apply to parole revocation proceedings. Thus, to my mind, it follows that petitioner has no justiciable claim.

It is now accepted that the fourth amendment "has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons." *Stone v. Powell,* 428 U.S. 465, 486, 96 S.Ct. 3037, 3049, 49 L.Ed.2d 1067 (1976). *See also United States v. Leon,* 468 U.S. 897, 906, 104 S.Ct. 3405, 3411, 82 L.Ed.2d 677 (1984). Indeed, while the exclusionary rule has its roots in the fourth amendment, the rule itself is not of constitutional origin. Rather, it is a judicially created remedy designed as a sanction against overreaching police conduct. *Leon,* 468 U.S. at 906–08, 104 S.Ct. at 3411–12. The rule does not operate as some separate personal constitutional right of the party asserting its benefit. *Id.* citing *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). It has been said that because the rule denies to the ultimate fact finder "clearly probative and reliable evidence," it should be carefully applied in only those limited circumstances justifying the deterrence of official, unlawful conduct. *Illinois v. Gates,* 462 U.S. 213, 257–58, 103 S.Ct. 2317, 2342, 76 L.Ed.2d 527 (1983) (*White, J.,* concurring in judgment). Otherwise, a too rigid application of the rule impedes the truth finding function, exacting too heavy a toll on the criminal justice system. *Leon,* 468 U.S. at 907–08, 104 S.Ct. at 3412.

For these reasons, the federal habeas petitioner has not been permitted to assert the exclusionary rule in federal court after he has had the opportunity to obtain the benefits of the rule in a state proceeding. *Stone v. Powell, supra.* Similarly, grand jury witnesses may not stand on the rule in refusing to answer questions based on evidence purportedly obtained in violation of the rule. *United States v. Calandra, supra.* And, even illegally seized evidence may be used in federal civil proceedings. *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). Moreover, a criminal defendant has not been permitted to assert the rule's benefit in excluding evidence unlawfully obtained from sources other than directly from himself. *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Even illegally obtained evidence may be used in a criminal case against the aggrieved party—the one from whom the evidence is obtained in violation of the rule—to impeach his direct testimony. *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). And, evidence obtained in violation of the rule may be used directly against an accused in the prosecution's case-in-chief, if it can be demonstrated that police held a good faith belief as to the lawfulness of their conduct. *Leon, supra.*

Moreover, the strict probable cause standard applicable to searches in the criminal context is relaxed and replaced with a standard of reasonableness in the conduct of searches by public employers of public employees' workplaces. *O'Connor v. Ortega,* 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). Similarly, there is no warrant requirement, but only the reasonableness standard again, in searches of schoolchildren by supervisory school officials. *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). And, the exclusionary rule does not apply to deportation proceedings, a process more akin to a civil action than a criminal action. *Immigra-*

Indeed, the *Bradley* court emphasized that the parolee had not consented to the search and suggested, *in dicta,* that the circumstances of a consent search might lead to a different result. 571 F.2d at 790. However, the *Workman* court,

in a situation which did involve a probation revocation proceeding, relied "primarily" on the *Bradley* decision. 585 F.2d at 1207. Thus, attempts to detract from the force of *Bradley* are squarely met by *Workman's* reinforcements.

*tion and Naturalization Service v. Lopez–Mendoza,* 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (plurality opinion).

■ This brief recapitulation is sufficient to support the suggestion that the exceptions to the rule's applicability are as varied as those situations calling for adherence to the rule. It also suffices to say that the application of the rule generally has been limited to those circumstances involving criminal trials. Parole revocation proceedings, in contrast, have long not been thought of as a part of a criminal prosecution. *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972). Rather, parole, while obviously important to those enjoying its benefits, is a "conditional liberty properly dependent on observance of special parole restrictions." *Id.* Thus, while basic due process protections must be assured the parolee in the revocation decision, those processes have been characterized as informal, with no thought to imitating an adversarial, criminal prosecution in any sense. *Id.,* 408 U.S. at 489, 92 S.Ct. at 2604. Accordingly, the parolee is entitled to written notice of the claimed violations; disclosure of the evidence against him; opportunity to be heard and to present evidence; in the general sense, the parolee is entitled to confrontation and cross-examination rights; a neutral decisionmaker; and, a written statement of the decision and the reasons supporting the decision. *Id.* These procedures are thought to insure the parolee that the revocation decision will be informed by basic fairness, avoiding reactions to arbitrariness and erroneous information.[4]

Finally, two recent Supreme Court cases underscore the *Morrissey v. Brewer* pronouncements that supervised, conditional liberty in the probation or parole context has its outer limits in the determination of which constitutional safeguards apply. In *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), the Court decided that statements made by a probationer to his probation officer, without prior *Miranda* warnings, are nevertheless admissible in a subsequent criminal proceeding. The probation environment admittedly has its coercive aspects, but those differ markedly from the coercive police-citizen confrontation thought to require warning of the *Miranda* safeguards. Nevertheless, the privilege of self-incrimination does not protect the probationer from giving information to his probation supervisor about matters relevant to his probation status. *Id.,* 465 U.S. at 436, 104 S.Ct. at 1147. And, in *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), the Court decided that a warrantless search of a probationer's residence on grounds less than probable cause—reasonable cause— was not prohibited by reason of the fourth amendment. This relaxed standard was thought appropriate considering the special needs of the probation system.[5] These special needs justify departures from normal fourth amendment requirements. In this fashion, the system insures that the probationer serve a period of genuine rehabilitation while society is protected from the probationer being at large. Strict adherence to fourth amendment standards, on the other hand, only substitutes the court in the role of probation supervisor. Moreover, it introduces into the supervision regime knowledge that the probationer could continue at some level of criminal activity short of that required to trigger probable cause.

■ Furthermore, there seems to be a second, overriding reason why the exclusionary rule should not apply to these

---

4. As noted earlier, the exclusionary rule serves little or no function in excluding erroneous information. To the contrary, evidence suppressed by the operation of the rule is inherently reliable and trustworthy. That principle is aptly demonstrated here where the evidence sought to be suppressed plainly demonstrates the violation of parole conditions.

5. In *Griffin,* the court equated the status of probationers and parolees in the context of supervision, their conditional liberty, etc. 107 S.Ct. at 3168. *Cf. Morrissey v. Brewer, supra* (only informal due process protections necessary for parole revocation proceeding) and *Gagnon v. Scarpelli,* 411 U.S. 778, 782 and n. 3, 93 S.Ct. 1756, 1759 and n. 3, 36 L.Ed.2d 656 (1973) (no difference between probation and parole in terms of due process guarantees).

facts. If the exclusionary rule is aimed at deterrence, rather than being an independent source of constitutional protections, then surely that deterrence was guaranteed to the petitioner here. To be sure, the search and its fruits—the cocaine—were suppressed in the Florida trial court. From that result, the ultimate deterrent sanction of dismissal was imposed. Thus, the unlawful police conduct which led to the charge of cocaine trafficking in the first place was punished to the full extent as the rule allows. *See United States v. Janis, supra,* 428 U.S. at 447–49, 96 S.Ct. at 3028–29. The constitution was thereby elevated to its intended place in the direct criminal prosecution. Petitioner has been assured that he will face no additional criminal sanction by virtue of the unlawful trafficking in cocaine on the Florida highways.

However, as has been amply demonstrated, this parole revocation proceeding is a far cry from a full blown criminal prosecution. Constitutional protections vindicated by the exclusionary rule do not apply with full force in the minimum due process environment of the parole revocation hearing. Societal costs thought worthy of paying for the operation the rule have already been exacted. Nothing is served by exacting that full measure of costs a second time. The very special needs of supervision identified in *Griffin v. Wisconsin, supra,* would be sacrificed if parole authorities were prohibited from weighing the full extent of petitioner's conduct by reason of the exclusionary rule. The parole revocation decision must meet the preponderance of proof standard, 28 C.F.R. § 2.52(a), after those tenets of minimum due process has been followed. Nowhere does the beyond-a-reasonable-doubt burden apply. The right to a trial by jury does not apply. The parolee does not even enjoy the right to a judicial decision maker. Neither, in my view, does a parolee have the right to insist on strict adherence to fourth amendment standards. And, for the reasons set out above, in my view the exclusionary rule does not apply either.

Moreover, it is important to remember that if there were a constitutional violation committed in the unlawful search and seizure, it certainly did not come about at the hands of the parole officer, removed hundreds of miles from the situs of the Florida stop. And, there is no evidence to even suggest that the parole officer and the offending Florida patrolman were somehow acting in concert. Thus, the supposed benefit thought to be achieved from the application of the exclusionary rule would do more than serve the deterrent function. It would extend to the extreme length of punishing a non-offending official. This circumstance, coupled with the precept that the rule creates no separate constitutional right in the aggrieved party, counsels against extending the rule to the particular facts attendant here. *See United States v. Janis, supra,* 428 U.S. at 455, 96 S.Ct. at 3032 (non-offending federal official should not be punished by imposing exclusionary rule sanction when a different official of a different sovereign committed constitutional violation).

Finally, in *Workman,* the case providing authority for courts in this circuit to apply the exclusionary rule, the court considered it critical that the balancing test of *Calandra* be applied, "by comparing [parole and probation] revocation hearings with other instances where the Supreme Court has considered the rule's application." 585 F.2d at 1210. In sum, the application of this test led the appellate court to conclude that "the Supreme Court has never exempted from the operation of the exclusionary rule any adjudicative proceeding in which the government offers unconstitutionally seized evidence in direct support of a charge that may subject the victim of a search to imprisonment." 585 F.2d 1211. However, as I have demonstrated by reference to *Minnesota v. Murphy, supra,* and *Griffin v. Wisconsin, supra,* the Supreme Court has decided that it is now permissible to introduce at probation revocation hearings evidence otherwise thought to be unconstitutionally obtained either in violation of *Miranda* or the exclusionary rule. Thus, the *Calandra* test deemed so critical by the fourth circuit in its decision to apply the exclusionary rule, has nevertheless not deterred the Supreme Court in deciding that some constitutional protections so important at the criminal trial itself do not continue to apply in the probation setting.

**388**

Moreover, in *Grimsley v. Dodson,* 696 F.2d 303 (4th Cir.1982), a fourth circuit panel concluded that the *Stone v. Powell, supra,* principle must be applied to prevent a federal habeas petitioner from obtaining federal collateral review of a state court decision admitting evidence unconstitutionally obtained in violation of the fourth amendment at a state court probation revocation proceeding. In *Grimsley,* a state probationer, in a separate trial on a charge of marijuana possession, successfully moved to suppress evidence obtained on a constitutionally deficient warrant. After the state prosecutor then moved for a *nolle prosequi* and the criminal charge was dismissed, the state probation officer sought probation revocation. Notwithstanding the earlier suppression, the state court permitted introduction of the evidence at the revocation proceeding and probation was revoked. On collateral review, the fourth circuit concluded that *Stone v. Powell* did not permit the federal habeas court to reexamine the admissibility of the evidence offered at the probation revocation hearing. 696 F.2d at 305. I cite to *Grimsley* to point out that, in concurring with the majority's conclusion, Judge Ervin stated his strong reaffirmation of *Workman,* but seemed to emphasize that it applied narrowly in those cases "where the searching officer is aware of the probationer's status ..." 696 F.2d at 310 (*Ervin, J.,* concurring). As noted, the searching officer here was a Florida highway patrolman, wholly unaware, as far as the record shows, of petitioner's parole status.

Accordingly, it is my conclusion that the exclusionary rule should not apply to prevent the respondent parole commission from considering the cocaine seized by the Florida highway patrolman at petitioner's parole revocation hearing. Therefore, petitioner has suffered no constitutional violation and his petition should be DISMISSED. IT IS SO RECOMMENDED.

February 15, 1989.